ELECTRONICALLY FILED - 2021 Jul 26 11:25 AM - HORRY - COMMON PLEAS - CASE#2021CP2604911

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF HORRY<br><br>Davis Livingston,<br><br>                    Plaintiff,<br><br>v.<br><br>City of North Myrtle Beach,<br><br>                    Defendant. | IN THE COURT OF COMMON PLEAS<br>FIFTEENTH JUDICIAL CIRCUIT<br><br><br><br>**SUMMONS** |

TO THE DEFENDANT ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty-five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

                                                **CROMER BABB PORTER & HICKS, LLC**

                                                BY: *s/Shannon Polvi*
                                                     Shannon Polvi (#101837)
                                                     1418 Laurel Street, Suite A
                                                     Post Office Box 11675
                                                     Columbia, South Carolina 29211
                                                     Phone: (803) 799-9530
                                                     Fax: (803) 799-9533
                                                     shannon@cbphlaw.com

July 26, 2021
Columbia, South Carolina

ELECTRONICALLY FILED - 2021 Jul 26 11:25 AM - HORRY - COMMON PLEAS - CASE#2021CP2604911

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF HORRY<br><br>Davis Livingston,<br><br>    Plaintiff,<br><br>v.<br><br>City of North Myrtle Beach,<br><br>    Defendant. | IN THE COURT OF COMMON PLEAS<br>FIFTEENTH JUDICIAL CIRCUIT<br><br><br><br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

Plaintiff, by and through undersigned counsel, complaining of Defendant herein, alleges as follows:

1. Plaintiff Davis Livingston ("Plaintiff") is a resident of Horry County, South Carolina, and he was formerly employed by Defendant.

2. Defendant City of North Myrtle Beach ("Defendant") is a municipal government in South Carolina.

3. Jurisdiction and venue are proper in Horry County as the events described herein occurred primarily around the City of North Myrtle Beach, South Carolina.

4. This action arises under the Americans with Disabilities Act and amendments thereto, 42 U.S.C. § 12101 *et seq.* ("ADA"), S.C. Code Ann. § 41-1-80, and the common law of South Carolina.

5. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff requested his Notice of Right to Sue and the EEOC acknowledged receipt of the request and the document is forthcoming on July 25, 2021.

## FACTUAL ALLEGATIONS

6. Plaintiff was the Superintendent of Pumping Stations.

7. Plaintiff was a full-time employee of Defendant from October 8, 1984 (plus an additional 6 months before that in a parttime job) until the wrongful termination on July 27, 2020.

8. Plaintiff began full-time employment with Defendant as a Pump Mechanic I.

9. Defendant promoted multiple times during his employment.

10. Plaintiff was in the supervisory role of Superintendent from 2007 until his termination. Plaintiff's supervisor throughout that time was Ralph Norris, Operations Manager.

11. Plaintiff had a positive 36-year employment record with Defendant.

12. Plaintiff suffered a traumatic fall while on the job on or around March 14, 2018. Plaintiff was giving blood at a workplace sponsored event. The workplace injury resulted in several bone breaks and the dislocation of his ankle. Plaintiff was discriminated against because of his disability caused by workplace injury to the right leg, ankle, and foot.

13. Plaintiff was out of work on medical leave for about six months. For the first couple of months, Plaintiff's workers' compensation claim was pro se, but eventually Plaintiff had to hire a workers' compensation attorney because Defendant's workers' compensation insurance carrier refused the medical care Plaintiff needed, for specialty needs for ankle reconstruction.

14. Plaintiff's workers' compensation claim continued to be contentious with his employer. Plaintiff's ankle was ruined from at least three breaks and dislocation.

15. Plaintiff was working periodically throughout his injury recovery efforts and his employer was on notice of Plaintiff's disability.

16. Plaintiff required a second surgery on February 25, 2019 to reconstruct his ankle.

ELECTRONICALLY FILED - 2021 Jul 26 11:25 AM - HORRY - COMMON PLEAS - CASE#2021CP2604911

17. Plaintiff returned to work around mid-June 2019 and Plaintiff worked continuously thereafter with accommodation needs for physical therapy and daily accommodations with the use of a brace and changes to the amounts and distances of walking and standing.

18. Plaintiff continued physical therapy for about a year after the surgery.

19. Plaintiff will need future medical care for the workplace injury and resulting disability.

20. Plaintiff needs for an ankle brace are ongoing and Plaintiff was using the brace on a daily basis at work up to and including the day he was put on a pretextual administrative leave.

21. Plaintiff was wearing the brace and everyone in the workplace could visibility see that sign of Plaintiff's disability and need for accommodation.

22. In May of 2020, Plaintiff reached a vacation cap, where Plaintiff had to use some of the time due to a leave time carryover cap. Plaintiff went on vacation at the end of May 2020. Plaintiff's last day at work was May 21, 2020.

23. Plaintiff received a call on May 29, 2020, from Defendant informing him to turn in the City's property and that he was being put on administrative leave. Plaintiff was blindsided. There were no details as to why given to Plaintiff. He asked for information and Plaintiff was told that they would not give him any information, but he was generally being investigated.

24. Throughout the administrative leave, Plaintiff complied with Defendant's multiple demands for information, meetings, and even the demand that Plaintiff take a lie detector test. Plaintiff had nothing to hide, and he complied with all requests in an effort to keep his job. All the while Plaintiff was in the dark about why he was even on administrative leave, that is because the real reason Plaintiff was on administrative leave was because of Defendant's search for reason(s) to fire Plaintiff because he is permanently disabled from the workplace injury.

ELECTRONICALLY FILED - 2021 Jul 26 11:25 AM - HORRY - COMMON PLEAS - CASE#2021CP2604911

25. On June 3, 2020, Plaintiff was called into work for a barrage of three meetings lasting hours. Plaintiff was questioned for an hour by Joe Turner – Safety Training Officer for Public Works. Then, Plaintiff was taken to Human Resources and questioned by Tammy O'Berry for about an hour with Crystal McGee present and typing notes. Plaintiff was also questioned by Kevin Blayton, Director of Public Works.

26. During those meetings, Plaintiff was asked about things from 5-8 years ago. Plaintiff was asked about whether he does drugs (no). Plaintiff was asked about flipping a knife (Plaintiff does not carry a knife). They implied as if Plaintiff was threatening someone (he did not). They asked if Plaintiff ever brought a gun to work (no). Plaintiff was asked if he assigned duties to employees as punishment (no – his department was regularly shorthanded, so he assigned duties based on abilities and many assignments were pre-approved by Plaintiff's supervisor). Plaintiff was asked if he had ever been asleep at work (Plaintiff only recalled once in 36 years when he took a nap at lunch). Plaintiff was asked if he has a drug problem (no). Plaintiff was asked about his health and whether he takes medication (yes, a couple on regular basis, Plaintiff identified the specific prescriptions he takes, why they are taken, times of day and frequency). Plaintiff was asked about solicitous sexual harassment accusations (Plaintiff told them that one man he supervised had looked at porn at work and Plaintiff reported it to his supervisor). Plaintiff's ankle disability was expressly discussed. Plaintiff was told that his behavior was erratic since returning to work from his ankle injury. Plaintiff respectfully explained that the accusations implied by the questions he was being asked were not accurate and that he was being treated wrongfully because of his disability caused by the workplace injury. Thus, Plaintiff engaged in protected activities close in time to his termination.

27. Plaintiff was told that multiple people complained about him. Plaintiff was forced to remained on unpaid administrative leave for months. Throughout that time, Plaintiff was never told who complained about him or what was said. The only details ever given to Plaintiff were in the termination notice, so after the fact of any purported investigation into Plaintiff. If there were complaints by individuals supervised by Plaintiff, they were motivated by individuals who Plaintiff held accountable. In the timeframe prior to the administrative leave, there were several employees that Plaintiff supervised that he had to discipline for violations of Defendant's policies. For example, an employee violently threatened Plaintiff and spit in Plaintiff's face and he is the same employee reported for the porn issue. Plaintiff believes he was the primary source of any complaint(s) against him. Plaintiff also had to hold accountable another employee shortly before these events transpired. In mid to late April 2020, Plaintiff had to write up that employee for not following safety protocols when dealing with Arc Flash, because it is an OSHA regulation and a City safety policy. That employee was angry with Plaintiff for the reprimand and Plaintiff believes he is one of the individuals involved in complaining about him. Defendant used these two employees' complaints, and maybe other unwarranted complaint(s) by employees who Plaintiff has held accountable, to act on its intent to fire Plaintiff because of his ankle disability caused by the workplace injury.

28. These various false accusations about which Plaintiff was questioned by Defendant's management were disseminated around the workplace and to the public.

29. During the administrative leave, in an effort to clear his name since he heard false accusations that he was a drug user, Plaintiff took a third-party drug test and filed the clean results with his employer. Plaintiff received no response.

ELECTRONICALLY FILED - 2021 Jul 26 11:25 AM - HORRY - COMMON PLEAS - CASE#2021CP2604911

30. Plaintiff contacted Defendant several times to follow up on why he was on administrative leave and if there was anything else he could provide or do in order to return to work. Multiple inquiries went without response from Defendant. When Plaintiff finally received a response, he was told by the individual that there were instructions in place to ignore Plaintiff.

31. Plaintiff remained on unpaid administrative leave from May 29, 2020 until his termination on July 27, 2020. These actions happened to Plaintiff because he is permanently disabled as a result of the workplace injury, particularly permanent disability to his right ankle which has required multiple surgeries, including ankle reconstruction.

32. The termination came close in time to the parties communications about Plaintiff's workers' compensation claim that was formally resolved on August 19, 2020.

33. Plaintiff was subjected to wrongful termination because of his protected activities opposing disability discrimination.

### FIRST CAUSE OF ACTION
### (Defamation)

34. Where not inconsistent herewith and alternatively, if necessary, Plaintiff realleges the foregoing.

35. Several false and defamatory statements were made about Plaintiff by Defendant.

36. Defendant defamed Plaintiff in word by falsely accusing Plaintiff of being an illegal drug user, a drug dealer, and an abuser of prescription drugs. Thereby, accusing Plaintiff of engaging in criminal conduct, which is defamation *per se*.

37. Defendant defamed Plaintiff by falsely conveyed to the public that Plaintiff took engaged in criminal misuse of drugs.

38. The false accusations in Defendant's termination notice issued to Plaintiff were published outside of the need-to-know basis and exceeded the scope of any privilege when such

ELECTRONICALLY FILED - 2021 Jul 26 11:25 AM - HORRY - COMMON PLEAS - CASE#2021CP2604911

ELECTRONICALLY FILED - 2021 Jul 26 11:25 AM - HORRY - COMMON PLEAS - CASE#2021CP2604911

false allegations therein were published. Such publication, accompanied by the defamatory statements of falsely saying that Plaintiff abuses drugs, and other defamatory and false statements impugn Plaintiff's character.

39. The defamation matriculated to the public, directly from Defendant to others in the workplace and to the public. Defendant is the source of these false accusations about Plaintiff.

40. The defamation known to Plaintiff began in early 2020 and followed in the subsequent months 2020.

41. These false and nonprivileged statements were maliciously published by Defendant. Plaintiff pleads all forms of malice by the Defendant, as actionable and if need be, he pleads them in the alternative, for these bad acts were done with implied, actual, and constitutional malice.

42. The defamatory actions and words of Defendant have directly and indirectly promulgated to the public at large the false insinuation that Plaintiff is unfit for his profession, and that he committed unprofessional, criminal, and unethical acts.

43. As a direct and proximate result of the aforesaid defamation, Plaintiff's personal and professional reputation has been damaged, he has suffered physical and emotional distress, mental anguish, humiliation, and he has also suffered the loss of earnings. A damage specific to Plaintiff's defamation claim are the costs related to the drug test and lie detector test.

44. Plaintiff is entitled to the judgment against the Defendant in an amount equal to the sum of his actual damages, including reputational harm, embarrassment, and suffering, and for attorney's fees and costs for bringing this action. Plaintiff is also entitled pre-judgment interest and to an award of punitive damages to be determined by a jury for the malicious and intentional conduct of the Defendant.

## SECOND CAUSE OF ACTION
### (Workers' Compensation Retaliation, S.C. Code Ann. § 41-1-80)

45.  Where not inconsistent herewith and alternatively, if necessary, Plaintiff realleges the foregoing.

46.  On or about March 14, 2018, Plaintiff sustained an injury by accident arising out of and in the course of his employment.

47.  Plaintiff instituted a good faith report of his workplace injury to Defendant, a protected activity under the South Carolina Workers' Compensation Law (Title 42 of the 1976 Code).

48.  On July 27, 2020, Defendant unilaterally terminated Plaintiff's employment. The termination was a retaliatory discharge because of Plaintiff's workers' compensation claim.

49.  The reasons Plaintiff was given for his termination are pretext for workers' compensation retaliation.

50.  There is a causal connection and close temporal relationship between Plaintiff's termination and Plaintiff's workers' compensation claim.

51.  By terminating Plaintiff's employment, Defendant violated S.C. Code Ann. § 41-1-80.

52.  Defendant is liable for lost wages suffered by Plaintiff as a result of the violation of S.C. Code Ann. § 41-1-80, and Plaintiff is entitled to be reinstated to his former position.

## THIRD CAUSE OF ACTION
### (Violation of the ADA and Amendments thereto)

53.  Where not inconsistent herewith and alternatively, if necessary, Plaintiff realleges the foregoing.

54. Plaintiff suffered a workplace injury on March 13, 2018. From the workplace injury, Plaintiff suffered injuries to his ankle. The workplace injury disabled Plaintiff at that time and continuously to the present.

55. Defendant was on notice of Plaintiff's disability.

56. Plaintiff was qualified and able to do his job.

57. Plaintiff was unlawfully subjected to failures to accommodate, administrative leave, and termination because of his disability and such actions are unlawful violations of the ADA for which Defendant is liable.

58. As a direct and proximate result of the violations of his civil rights under the ADA by Defendant, Plaintiff suffered actual damages in the form of lost wages and benefits, and compensatory and other intangible damages, including the loss of earning capacity, pain and suffering, and emotional distress. Plaintiff is entitled to an award of punitive damages for the willful and intentional acts of Defendant through its agents and employees, for pre-judgment interest, tax offset for a lump sum award, equitable relief, and reasonable attorney's fees and costs of this cause of action.

### FOURTH CAUSE OF ACTION
(Retaliation in Violation of the ADA and Amendments Thereto)

59. Where not inconsistent herewith and alternatively, if necessary, Plaintiff realleges the foregoing.

60. Plaintiff engaged in protected activities under the ADA when he requested reasonable accommodations.

61. Plaintiff engaged in activities protected under the ADA by opposing Defendant's failure to accommodate Plaintiff.

ELECTRONICALLY FILED - 2021 Jul 26 11:25 AM - HORRY - COMMON PLEAS - CASE#2021CP2604911

62. Plaintiff engaged in protected activities under the ADA when he was interrogated by Defendant's management on June 3, 2020.

63. Because of Plaintiff's protected activities, Defendant terminated Plaintiff on July 27, 2020.

64. Defendant terminated Plaintiff in violation of the Anti-Retaliation provisions of the ADA and caused Plaintiff damages that he is entitled to recover as a result of the same, including actual damages in the form of lost wages and benefits, compensatory and other intangible damages, including pain and suffering and emotional distress. Plaintiff is entitled to an award of punitive damages for the willful and intentional acts of Defendant through its agents and employees, for pre-judgment interest, tax offset for a lump sum award, equitable relief, and reasonable attorney's fees and costs of this cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Davis Livingston prays for judgment against Defendant for all damages as plead above in an amount to be determined by a jury and to the full extent allowed by law. Plaintiff further prays for reinstatement, tax offset, pre-judgment interest, attorneys' fees, and costs associated with this action and any such other relief as the Court may deem just and proper.

**CROMER BABB PORTER & HICKS, LLC**

BY: _s/Shannon Polvi_
Shannon Polvi (#101837)
1418 Laurel Street, Suite A
Post Office Box 11675
Columbia, South Carolina 29211
Phone: (803) 799-9530
Fax: (803) 799-9533
shannon@cbphlaw.com

July 26, 2021
Columbia, South Carolina

ELECTRONICALLY FILED - 2021 Jul 26 11:25 AM - HORRY - COMMON PLEAS - CASE#2021CP2604911